```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE ANTONIAK, et al.         :         CIVIL ACTION
                                :
          v.                    :
                                :
MARTIN ARMSTRONG, et al.        :         NO. 18-1263
```

MEMORANDUM

Bartle, J.                                      January 8, 2019

       Plaintiffs George Antoniak, Andrew Antoniak, and I. Switt (the "Antoniaks") bring this diversity action against defendant Martin Armstrong for a declaratory judgment under 28 U.S.C. § 2201. Specifically, the Antoniaks seek a declaration that a certain coin collection belongs to them as bona fide purchasers. Armstrong thereafter joined the party currently holding the coins, Heritage Numismatic Auctions, Inc. ("Heritage"), as a third-party defendant. Before the court is the motion of the Antoniaks to compel arbitration of and to stay cross-claims asserted by Heritage.

                                    I

       According to the amended complaint, the Antoniaks are engaged in the business of purchasing and selling coins and precious stones. On September 14, 2017, they entered into a Consignment Agreement with Heritage to auction the coins at issue here. Thereafter, in December 2017, an attorney for defendant Armstrong contacted Heritage and asserted that Armstrong was the

true owner of the coin collection consigned to Heritage by the Antoniaks. As a result, Heritage removed the coins from the auction. Heritage agreed to retain and not to sell the coins until the dispute regarding ownership is resolved.

On March 27, 2018, the Antoniaks filed in this court their complaint against Armstrong.[1] Thereafter, on June 14, 2018, Armstrong filed a third-party complaint in which he brought Heritage into this action as a third-party defendant. In the third-party complaint against Heritage, Armstrong asserted that he is the rightful owner of the coins and that the coins should be returned to him immediately. Heritage filed a motion to dismiss the third-party complaint against it, which we denied.

On November 8, 2018, Heritage filed an answer to Armstrong's third-party complaint. In the answer, Heritage asserted cross-claims against the Antoniaks for indemnification under the terms of the Consignment Agreement entered into by the Antoniaks and Heritage and under common law. Heritage seeks a judgment against the Antoniaks "in the amount equal to its legal fees, costs and liability exposure to Armstrong." On December 13,

---

1. Plaintiffs initiated this action anonymously as "John Does." On August 6, 2018, we granted as unopposed the motion of Armstrong to strike plaintiffs' use of pseudonyms and to compel use of legal names. On August 10, 2018, plaintiffs filed an amended complaint using their legal names. On August 24, 2018, Armstrong filed an answer to the amended complaint with counterclaims against plaintiffs for declaratory judgment, conversion, unjust enrichment, and for injunctive relief.

2018, in response to the cross-claims of Heritage, the Antoniaks filed a motion to compel arbitration and to stay any indemnification due under the cross-claims pending arbitration.

Paragraph 13 of the Auction Consignment Agreement states:

> <u>Exclusive Dispute Resolution Process</u>: All claims, disputes, or controversies in connection with, relating to, and/or arising out of this Agreement, any amendment thereof, any advance hereunder, any consigned Properties or damage to consigned Properties, any interpretation of this Agreement, any alleged verbal modification and/or any purported settlement, whether asserted in contract, tort, under Federal or State statute or regulation, or any claim made by the buyer of your Properties or a Participant in the auction involving your Properties (which claim you consent to be made a party) (collectively, "Claim") shall be exclusively heard by, and the claimant (or respondent as the case may be) and Heritage each consent to the Claim being presented in a confidential binding arbitration before a single arbitrator administered by and conducted under the rules of, the American Arbitration Association. The locale for all such arbitrations shall be Dallas, Texas. The arbitrator's award may be enforced in any court of competent jurisdiction.

The Agreement, dated September 14, 2017, was executed by Andrew Antoniak.

## II

With the enactment of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., Congress "expressed a strong federal policy in favor of resolving disputes through

-3-

arbitration." Flintkote Co. v. Aviva PLC, 769 F.3d 215, 219 (3d Cir. 2014) (quoting Century Indem. Co. v. Certain Underwriters at Lloyd's, London, 584 F.3d 513, 522 (3d Cir. 2009)). The FAA provides that as a matter of federal law "[a] written provision" in a commercial contract showing an agreement to settle disputes by arbitration "shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. Furthermore, under the FAA, a "party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003) (citing 9 U.S.C. §§ 3-4).

When a federal court addresses a motion to compel arbitration, it is "limited to a narrow scope of inquiry." Gay v. CreditInform, 511 F.3d 369, 386 (3d Cir. 2007) (internal quotation marks and citation omitted). The court may consider only "gateway matter[s]" regarding the question of arbitrability, such as whether an arbitration agreement encompasses a particular controversy or whether the arbitration agreement binds the parties. See, e.g., Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580, 585 (3d Cir. 2007). "Thus, 'only when there is a question regarding whether the parties should be arbitrating at all' is a question

-4-

of arbitrability raised for the court to resolve." Id. (quoting Dockser v. Schwartzberg, 433 F.3d 421, 426 (4th Cir. 2006)). Otherwise, "resolution by the arbitrator remains the presumptive rule." Id. (quoting Dockser, 433 F.3d at 426); see also In re Pharmacy Ben. Managers Antitrust Litig., 700 F.3d 109, 116 (3d Cir. 2012).

Here, the Consignment Agreement between Heritage and plaintiffs broadly provides that "[a]ll claims, disputes, or controversies in connection with, relating to, and/or arising out of" the Agreement or the consigned properties, "whether asserted in contract, tort, under Federal or State statute or regulation," are subject to arbitration. Heritage does not dispute the validity or scope of the arbitration provision and does not challenge that its indemnification claims are subject to arbitration.[2] Rather, Heritage asserts that the Antoniaks have waived their right to arbitration and that Heritage would be prejudiced if it would be forced to arbitrate its cross-claims against them.

Waiver of arbitration is not favored and "will normally be found only where the demand for arbitration came long after the suit commenced and when both parties had engaged

---

2. As noted above, the Consignment Agreement was signed by Andrew Antoniak alone. It makes no mention that he acted in a representative capacity. The Antoniaks do not contest that the Consignment Agreement is binding on all of the plaintiffs.

in extensive discovery." Nino v. Jewelry Exch., Inc., 609 F.3d 191, 208 (3d Cir. 2010) (quoting PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068-69 (3d Cir. 1995)). A court may refuse to enforce an arbitration agreement where a "party has acted inconsistently with the right to arbitrate, and we will not hesitate to hold that the right to arbitrate has been waived where a sufficient showing of prejudice has been made by the party seeking to avoid arbitration." Id. (internal citations and quotation marks omitted).

"[P]rejudice is the touchstone for determining whether the right to arbitrate has been waived by litigation conduct." Zimmer v. CooperNeff Advisors, Inc., 523 F.3d 224, 231 (3d Cir. 2008) (quoting Ehleiter v. Grapetree Shores, Inc., 482 F.3d 207, 222 (3d Cir. 2007)) (internal quotation marks omitted). Our Court of Appeals has identified six nonexclusive factors to guide the prejudice inquiry:

> (1) timeliness or lack thereof of the motion to arbitrate; (2) extent to which the party seeking arbitration has contested the merits of the opposing party's claims; (3) whether the party seeking arbitration informed its adversary of its intent to pursue arbitration prior to seeking to enjoin the court proceedings; (4) the extent to which a party seeking arbitration engaged in non-merits motion practice; (5) the party's acquiescence to the court's pretrial orders; and (6) the extent to which the parties have engaged in discovery.

In re Pharmacy Ben. Managers Antitrust Litig., 700 F.3d at 117 (quoting Gray Holdco, Inc. v. Cassady, 654 F.3d 444, 451 (3d Cir. 2011)).

Heritage asserts that the Antoniaks waived their right to arbitration by initiating this action against Armstrong and by actively litigating their ownership dispute for approximately nine months, including the taking of the depositions of two Heritage employees. Heritage maintains it will be prejudiced if it is compelled to arbitrate its indemnification cross-claims in a separate forum while also defending itself in the ownership dispute here, which arises from the same factual nexus.

The Antoniaks initially filed this suit against Armstrong, who was not a party to the Consignment Agreement and thus could not be required to arbitrate any ownership dispute with them. Armstrong filed his third-party complaint against Heritage on June 14, 2018 and effectuated service of process on June 26, 2018. Until that time, Heritage was not a party to this action. Heritage first asserted its cross-claims for indemnification against the Antoniaks on November 8, 2018. There was no controversy between the Antoniaks and Heritage, and thus nothing to arbitrate, until Heritage filed its cross-claims for indemnification against the Antoniaks. The Antoniaks acted

promptly thereafter. On December 13, 2018, a little over a month later, they moved to arbitrate.[3]

The Antoniaks do not seek arbitration of their ownership dispute with Armstrong or the ownership dispute between Armstrong and Heritage. Instead, the Antoniaks simply seek arbitration of Heritage's right to indemnification from them for any judgment entered against Heritage in this action as well as fees and costs incurred. Thus, Heritage will not be prejudiced by an order compelling it to honor the clear terms of its own Consignment Agreement. We conclude under the factors set forth in In re Pharmacy Benefit Managers Antitrust Litigation that the Antoniaks have not waived their right to arbitrate the cross-claims for indemnification asserted by Heritage. See 700 F.3d at 117.

We will order that any arbitration of Heritage's indemnification claims be stayed until resolution of the ownership dispute presented in this action. Although the FAA provides that a federal court may stay litigation pending arbitration, there is no provision for a stay of arbitration pending the result of relevant litigation. See 9 U.S.C. § 3. Nonetheless, the power of a district court to grant such stay in appropriate circumstances has been recognized as inherent in the

---

3. The parties stipulated to a brief extension of time for plaintiffs to file a response to the cross-claims due to a change in plaintiffs' counsel.

court's authority to control its docket.  A stay of arbitration
pending resolution of litigation is particularly compelling
where the issue for arbitration is indemnification, an issue
that depends on the outcome of claims in the underlying action
which are not subject to arbitration.  See Petroleum
Helicopters, Inc. v. Boeing-Vertol Co., 478 F. Supp. 84, 86
(E.D. La.), aff'd per curiam, Petroleum Helicopters v.
Boeing-Vertol Co., 606 F.2d 114 (5th Cir. 1979).  Until the
litigation between the Antoniaks and Armstrong and between
Armstrong and Heritage concerning ownership of the coins is
resolved, it is not possible for the indemnification issue to be
decided in arbitration.  Recognizing this reality, the Antoniaks
have stated that they will agree to defer arbitration of the
indemnification cross-claims until the conclusion of this
action.

        Accordingly, the motion of the Antoniaks to compel
arbitration of and to stay cross-claims will be granted.[4]  The

---

4.  The Consignment Agreement requires that any arbitration must
take place in Dallas, Texas.  Section 4 of the FAA requires the
district court to compel arbitration in accordance with the
parties' agreement but only allows a court to order arbitration
in the forum district, in this case the Eastern District of
Pennsylvania.  See Econo-Car Int'l, Inc. v. Antilles Car
Rentals, Inc., 499 F.2d 1391, 1394 (3d Cir. 1974).  The
limitation in § 4 is a venue provision and thus may be waived.
Id. at 1394 n.14; see also 1mage Software, Inc. v. Reynolds &
Reynolds Co., 459 F.3d 1044, 1055 (10th Cir. 2006).  Neither
party has objected to venue in this court with respect to its

-9-

arbitration of Heritage's cross-claims for indemnification will be stayed pending resolution of the ownership dispute presented in this action.

---

ordering arbitration to take place in Texas.  Thus, we conclude that any objection to venue has been waived.