```
                IN THE UNITED STATES DISTRICT COURT
             FOR THE EASTERN DISTRICT OF PENNSYLVANIA

GEORGE ANTONIAK, et al.         :
                                :
        v.                      :
                                :        CIVIL ACTION
MARTIN ARMSTRONG,               :
                                :
        v.                      :        NO. 18-1263
                                :
HERITAGE NUMISMATIC AUCTIONS,   :
INC.                            :
```

MEMORANDUM

Bartle, J.                                        August 3, 2020

Plaintiffs George Antoniak ("George"), Andrew Antoniak ("Andrew"), and I. Switt (collectively, the "Antoniaks") brought this diversity action against defendant Martin Armstrong ("Armstrong") for a declaratory judgment under 28 U.S.C. § 2201. Specifically, the Antoniaks sought a declaration that a certain collection of 58 coins belonged to them as bona fide purchasers. Armstrong thereafter joined the party holding the coins at that time, Heritage Numismatic Auctions, Inc. ("Heritage"), as a third-party defendant. On October 18, 2019, this Court dismissed the action as moot on the ground that Judge Kevin Castel of the United States District Court for the Southern District of New York had determined that the 58 coins belonged to a third-party court appointed receiver for Princeton Economics International, Ltd. and

its affiliated entities.[1]  Subsequently, the Antoniaks and Heritage sought counsel fees and costs, as well as sanctions against Armstrong and his attorney, Thomas Sjoblom.  On May 19, 2020, this Court ruled that only Heritage, not Antoniaks, was entitled to reasonable attorney's fees and costs against Armstrong and his attorney Thomas Sjoblom, jointly and severally.  See Doc. No. 144. Before the court is the motion of Armstrong and his attorney, Thomas Sjoblom, for reconsideration of this Court's May 19, 2020 Order granting reasonable attorney's fees to Heritage.

I

A motion for reconsideration may be granted only where the moving party can establish one of the following:  (1) there has been an intervening change in controlling law; (2) new evidence has become available; or (3) there is need to correct a clear error of law or to prevent manifest injustice. Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  Our Court of Appeals has noted that the scope of a motion for reconsideration is quite limited. See Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011).  A motion for reconsideration "should not be used as a means to argue new facts or issues that inexcusably were not presented to the court

---

[1]   See SEC v. Princeton Econ. Int'l, Ltd., No. 99-9667 (S.D.N.Y. July 16, 2019); CFTC v. Princeton Econ. Int'l, Ltd., No. 99-9669 (S.D.N.Y. September 5, 2019).

in the matter previously decided." See Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1231 (3d Cir.1995). Accordingly, it is "improper . . . to ask the Court to rethink what [it] had already thought through-rightly or wrongly." Glendon Energy Co. v. Bor. of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993).

II

Armstrong asserts that his motion for reconsideration should be granted because: (1) "[n]ew evidence has emerged since the date of the proceedings before the Court"; and (2) that this Court's ruling constitutes a "clear error of law or fact" or creates a "manifest injustice." Armstrong's attorney further maintains that "Sjoblom's conduct was not undertaken in willful bad faith" and that he should not be sanctioned because he "permissibly relied on the representations of his client."

First, Armstrong submits as new evidence, a signed declaration of Victor England ("England Declaration"), who "has now come forward to state unequivocally that no one could ascribe certainty to what coins were covered by the Stamoulis Declaration[2] at any state of these proceedings." In his

---

[2] Stamatios Stamoulis was a former associate at the law firm of O'Melveny & Myers, LLP, who was hired by the court-appointed receiver for PEIL to conduct an investigation into Armstrong's assets. Stamoulis drafted a declaration ("Stamoulis Declaration") dated December 15, 1999, which included invoices of at least 49 of the 58 coins at issue.

-3-

Declaration, which was never produced in this Court or the Southern District of New York before this filing, England states that "it is impossible to determine which coins" were referenced in the Stamoulis Declaration.  England asserts that:  the Stamoulis Declaration contained "hundreds of pages of invoices"; the invoices "reflect only lot numbers with no description of any particular coin"; "no inventory was ever provided"; and generally, there was "lack of certainty . . . without access to actual catalogs."  According to Armstrong, the England Declaration is "new evidence" which establishes "unequivocally" that Armstrong rightfully "undertook the lawsuit to re-obtain his property."

This Court will give no consideration to the England Declaration.  Victor England is not a new player in this action.  He is the former principal of Classical Numismatic Group, Inc., a rare and antiques coin dealing company of which Armstrong has been a customer since at least 1994.  England has been involved in litigation related to Armstrong since 1999.  Indeed, he was the first person Armstrong claims informed him "that some of his coins were being offered by Heritage [in an auction]."  England also worked with the parties in this action to determine which coins were part of the Stamoulis Declaration throughout the length of this litigation.  The England Declaration is merely an affidavit of someone who had a long-time close association with

Armstrong.  He was available during the entire time of this action and was never deposed, never summoned to court to testify, and never offered as an expert until now.  If the "lack of certainty" was such a central aspect of Armstrong's claim, it is surprising that his testimony was never presented to the court at some point before we ruled on the issue of counsel fees.  Accordingly, no "new evidence" has been presented to the Court for reconsideration of its May 19, 2020 Order granting reasonable attorney's fees to Heritage.

Second, Armstrong maintains that this Court's ruling constitutes a "clear error of law or fact" because Armstrong: (1) "did not abuse the judicial process" by filing a third party complaint against Heritage; (2) had "proof of ownership" of the coins and held "good faith belief the 58 coins were his personal property"; (3) did not know which coins were "identified with particularity in the CFTC Judgment"; and (4) "neither multiplied the proceedings, nor acted vexatiously and unreasonably."

The Court is not convinced.  These assertions simply reformulate the same arguments that were presented previously to this Court.  See Doc. No. 146.  A motion that advances the same arguments presented in previous briefs and motions is "not a proper basis for reconsideration."  See Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010).  As noted previously, Judge Castel

similarly did not find these arguments convincing and determined that the 58 coins did not belong to Armstrong.

Armstrong further claims that this Court's ruling creates a manifest injustice because "Covid-19 has effected" his income and that he has "contracted Bell's Palsy" recently, which further hinders his ability to earn money. While we empathize with Armstrong's medical condition and the state of the world during the COVID-19 pandemic, these factors as well as his difficulty in making money are irrelevant to our determination. They do not make our decision "clearly erroneous" and "adherence to that decision" does not meet the standard for manifest injustice. See In re City of Philadelphia Litig., 158 F.3d 711, 721 (3d Cir. 1998).

Third, Armstrong's attorney Thomas Sjoblom claims that he should not be held liable for the award of Heritage's counsel fees and costs because: his "conduct was not undertaken in willful bad faith," he did not act "vexaiously or unreasonably," and that he "relied on the representations of Armstrong . . . [who] testified under penalty of perjury." Specifically, Sjoblom argues that "it is a factual error to say Sjoblom 'knew or should have known' that 49 of the coins were covered by the CFTC judgment" because "England said it was not possible." We disagree. Both Armstrong and Sjoblom are sophisticated individuals who were involved throughout the lengthy litigation in the Southern District

of New York, as well as this Court.  Indeed, Thomas Sjoblom has been a "member of the bar of this Court since January 2000."  He has extensive legal experience, including serving "as an Assistant Chief Litigation Counsel at the SEC in Washington, DC and as a Special Assistant United States Attorney in this District."

Sjoblom, we reiterate, knew or should have known that Armstrong had no valid claim to any of the 58 coins at issue.  Sjoblom now claims that "[he] was not involved in the contempt proceedings in 2000 [and that he] did not know what coins Armstrong ever owned."  Sjoblom became Armstrong's counsel in 2003.  Surely he was aware of and reviewed Judge Richard Owen's Findings of Fact and Conclusions of Law handed down in 2000 before he filed the third-party complaint against Heritage in 2018.  In his Findings of Fact and Conclusions of Law, Judge Owen determined that Armstrong had "failed to turn over <u>all assets</u> of [PEIL] that he had in his possession, custody, or control, including missing . . . rare coins and antiquities."  <u>See</u> <u>SEC v. Princeton Econ. Int'l, Ltd.</u>, No. 99-9667 (S.D.N.Y. Aug. 25, 2000) (emphasis added).  This included coins appearing on the invoices attached to the Stamoulis Declaration.

Even if Sjoblom genuinely believed at one point that Armstrong had a legitimate right to the 58 coins, Sjoblom was present and represented Armstrong when he voluntarily relinquished such rights.  On June 24, 2008, when Armstrong entered into the

"Judgment and Consent Order of Permanent Injunction and Other Equitable Relief Against Defendant Martin A. Armstrong" ("CFTC Agreement") with the CTFC, Sjoblom was "counsel to Armstrong."  In the CFTC Agreement, Armstrong acknowledged that he was "waiv[ing] all of his rights and claims to the property and assets listed in Exhibit 1" which identified a "declaration of Stamatios Stamoulis, dated December 15, 1999."  Sjoblom also signed and "consented to" the CFTC Agreement.  Sjoblom now claims that "[Armstrong] was not given or shown the Stamoulis Declaration at the time of the signing" and that Sjoblom first "retrieved" the Stamoulis Declaration in "July or August 2018."  He further claims that "[he] was not given or saw the Stamoulis Declaration."  An attorney has an ethical and professional duty carefully to review documents before advising a client and especially before the client signs a legal, binding agreement.  We find Sjoblom's claim that he never read or verified the Stamoulis Declaration before signing and consenting to the CFTC Agreement disingenuous.  At the end of the day, Attorney Sjoblom filed a third-party complaint in this Court that alleged Armstrong owned the 58 coins when he knew or should have known – based on the CFTC Agreement he personally signed and to which he consented – that the coins did not belong to Armstrong. Sjoblom further filed the third-party complaint when he knew that Heritage had agreed to retain the coins pending resolution of the ownership issue.  This set off a chain reaction of motions,

briefings, and events that prolonged this matter longer than necessary.  Heritage was caught in the crossfire and is entitled to all its reasonable counsel fees and costs caused from the start by the above described misconduct of Armstrong and Sjoblom.

Accordingly, the motion of Armstrong for reconsideration will be denied because he has failed to establish an intervening change in controlling law, the existence of new evidence, or a need to correct a clear error of law or to prevent manifest injustice.  See <u>Max's Seafood Cafe by Lou-Ann, Inc.</u>, 176 F.3d at 677.[3]

---

[3]   The Court must still determine what amount of counsel fees and costs to award Heritage.